OPINION OF THE COURT
Philip S. Straniere, J.
“Don’t worry lads we’re on your side
“Solidarity forever.
“Solidarity, solidarity
“Solidarity forever
“We’re proud to be working class,
“Solidarity forever.”[1]
The above lyrics from “Solidarity” from “Billy Elliot The Musical” sung by striking coal miners in Margaret Thatcher’s England apparently do not necessarily apply in labor unions when there is a change in union leadership as evidenced by this litigation.
Claimant, Aubrey Norris, commenced this day small claims action against the defendant, SSEU Local 371, by its president, Anthony Wells, and secretary, Joe Nazario (SCR No. 40/12). Claimant, Reuben Adeshuko, commenced this day small claims action against Social Services Employee Union 371 by its president Anthony Wells and secretary Joe Nazario (SCR No. 41/12). Each claimant alleged that the defendant failed to properly *973 calculate the amount due claimant for severance pay. Because there were common issues of law and fact, the parties stipulated to have the cases consolidated for trial. It was conceded that although each claimant used a different name for the defendant, they were both suing the same entity. Adeshuko had used the entire name for the defendant while Norris referred to defendant’s more common abbreviated name. The court will use SSEU to refer to the defendant throughout this decision. Each claimant appeared without counsel. Defendant was represented by an attorney.
It should be noted that defendant SSEU is a member of the American Federation of State, County and Municipal Employees (AFSCME).
Prior to the trial claimant Adeshuko withdrew his claim for unpaid vacation days, indicating that issue had satisfactorily been resolved with the defendant. Both claimants testified similarly that they were employees of the City of New York who were elected or appointed to posts with defendant SSEU to serve in various capacities on the union staff. Both claimants were compensated by the City with additional pay being earned for working with the union which was paid by the union.
Claimants contended that the long-standing policy of the union was that when a union staff employee was terminated, three weeks’ severance pay was given to the staff member being separated from employment. Both claimants testified that they only received two weeks’ severance pay. They ceased working in their respective union capacities as of May 2, 2011 when new leadership took over control of the union. There does not appear to have been any written policy in the union’s operational manual for the calculation of severance.
Defendant alleged that the standard policy was for two weeks’ severance and in any case when the new leadership took over the union, they only authorized two weeks’ severance. Defendant contends that absent a written policy fixing the amount of severance, payment of severance was discretionary with the union leadership and subject to change at the option of the leadership. As of May 4, 2011, the new leadership instituted a policy of two weeks’ severance and that is what was paid to each claimant. A copy of the minutes from that meeting on May 4, 2011 was placed in evidence by the defendant.
Both sides called witnesses to testify. Based on the testimony of all the witnesses, it must be concluded that there was no written severance policy with this local. One defendant witness *974 stated that when he left his union position in 1993 he received no severance pay. On the other hand claimants’ witnesses and one defendant witness all testified that in recent years, three weeks’ severance was paid to all union staff who were terminated.
Apparently as a member union of AFSCME, defendant “must” have a policy governing employee severance which is “clearly to identify how the amount of severance is to be calculated, identify the maximum allowable, if there is a maximum, and state when it is to be paid.” Claimants provided a copy of a memorandum dated February 9, 1983 entitled “Article X-Severance Pay” which indicated that employees such as the claimants herein, who served between 5 and 12 years, would receive three weeks’ pay. Those with more than 12 years would be entitled to four weeks’ salary. Unfortunately there is no evidence that this was ever adopted as a policy by the local. In fact, handwritten on the document are the words, “management’s proposal.” Also none of the parties nor the witnesses had any institutional memory as to whether this proposal was ever enacted as policy.
Legal Issues Presented
A. Is Each Claimant’s Action Barred by the Statute of Frauds?
Because it is conceded that on the date the claimants were terminated from their respective positions with the defendant union no written severance policy was in place, the question arises as to whether claimants’ actions are barred by the statute of frauds. In other words, is a promise to make severance payments the type of agreement which must be in writing to be enforceable.
New York’s statute of frauds is contained in General Obligations Law § 5-701. It provides:
“Agreements required to be in writing
“a. Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his[2] lawful agent, if such agreement, promise or undertaking:
“1. By its terms is not to be performed within one year from the making thereof or the performance of which is not to be completed before the end of a lifetime.”
*975 This issue has arisen in other similar actions involving workers’ rights and courts have concluded that the statute of frauds will not bar an action for employment related benefits “where employees show that it was a regular policy and practice of the employer to pay the benefits they claim . . . (Doyle v Turner, 1994 WL 524996, *1, 1994 US Dist LEXIS 13623, *3 [SD NY, Sept. 26, 1994, No. 86 Civ 2792 (CSH)].)
The court in Doyle went on to note:
“In contrast to most actions where a single employee seeks recovery based on an oral promise, the case at bar involves a large employer’s company-wide policies and practices which apply equally to all employees. The statute of frauds was intended to prevent fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury. An employer’s long-term, company-wide policy, supported by ample financial records is not likely to induce the same type of problems where the questionable contract provision is merely with one employee” (1994 WL 524996, *1, 1994 US Dist LEXIS 13623, *3).
Although there are not a large number of employees involved, other workers besides the two claimants left the employ of the union on May 2, 2011 and were affected by the lack of a written severance policy. It is conceded by all parties that there was a severance policy in place, although not in writing. The only issue is the number of weeks of severance pay to which the claimants would be entitled, a situation which would seem to defeat any statute of frauds defense. Further a distinction must be made between the issue of whether or not there was the existence of a policy which theoretically might be subject to the statute of frauds and the amount of compensation to be received. It would seem that the issue of whether a severance policy is a contract which could not be performed within a year and subject to the statute of frauds is really nonexistent because an employee could be terminated at any time, that is, after a day, a week, a month, a year, or many years. Therefore the payment of separation compensation has the possibility of being performed in less than a year which, under common-law contracts, means the statute of frauds does not apply.
The issue in this case is not whether there exists a severance policy. The issue is what are the terms of compensation, which is not a statute of frauds matter.
*976 B. Is Defendant in Compliance with New York Law?
As noted above, defendant was required by AFSCME to have a written severance policy, which was not put into effect until after the claimants ceased working for defendant on May 2, 2011.
Labor Law § 195 provides:
“Notice and record-keeping requirements
“Every employer shall: . . .
“5. notify his[3] employees in writing or by publicly posting the employer’s policy on sick leave, vacation, personal leave, holidays and hours.”
The court in Doyle v Turner determined that this provision applied to severance pay as well as those items enumerated in the statute. Labor Law § 190 (1) defines wages and Labor Law § 198-c includes separation pay in the definition of benefits or wage supplements, separation pay and severance pay being synonymous terms. The failure to properly define these benefits in compliance with the Labor Law exposes the defendant employer to penalties in certain situations, except it appears that because the claimants may have been engaged in administrative or executive duties, the defendant is exempt from the civil penalty provisions of Labor Law article 6.
Therefore, by not having a published written policy available to its workers, the defendant was not in compliance with the statute. Not only would this render a statute of frauds defense unavailable by the union, but it would also seem to shift the burden to the defendant to establish what severance policy was in effect. The only credible testimony from all of the witnesses is that on the date of separation the practice of defendant was to offer three weeks’ pay.
C. Does Case Law Support a Right of Recovery?
Case law in New York supports the proposition that employees who can establish that they relied on the practices of their employer in regard to an oral severance policy have a valid cause of action (Weisler v Metal Polishers Union & Metal Prod. & Novelty Workers Union 8A-28A, 533 F Supp 209, 219 [SD NY 1982]). Therefore a question of fact to be determined at this trial is whether the claimants relied on the oral severance policy of the defendant in effect while they were employed and on the date their services were terminated. Based on the credible testimony the claimants have established that three weeks’ severance was the policy in place and that they relied on that fact.
*977 Conclusion
Judgment for claimants. Claimants have each established a prima facie case. The credible evidence is that the defendant failed to have a written severance policy as required by the Labor Law and AFSCME regulations during the period of claimants’ employment. The claimants relied on the practice and procedures in place while they were employed by the union of terminated employees receiving three weeks’ severance pay. There is no testimony to establish that the claimants were terminated for cause or for any other reason which might prevent them from collecting severance pay.
The credible testimony is that new union leadership was elected and as was the custom and practice of the union, employees such as the claimants herein often voluntarily left or were expected to leave their positions so that the new leadership could fill spots with their own personnel. The fact that the defendant instituted a policy of two weeks’ severance pay on May 4, 2011, two days after the claimants ceased employment at the union headquarters, is not binding on these claimants.
The unwritten practice and policy of the defendant in place at the time the claimants ceased working for defendant was three weeks’ severance.
SCR No. 40/12: Judgment for claimant Norris in the amount of $1,135.45 with interest from May 2, 2011, costs and disbursements.
SCR No. 41/12: Judgment for claimant Adeshuko in the amount of $1,456.25 with interest from May 2, 2011, costs and disbursements.

. “Solidarity” from “Billy Elliot The Musical,” music by Elton John, book and lyrics by Lee Hall.

. This statute has not been made gender neutral.

. Neither has this statute been made gender neutral.